# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER LAKKIS | : |
| Plaintiff | : |
| v. | : 3:12-CV-1024 |
| | : (JUDGE MARIANI) |
| FREDERICK LAHOVSKI and | : |
| JOE CHACKE | : |
| Defendants | : |

## MEMORANDUM OPINION

### I. Introduction

Before the Court is Defendants' Motion to Dismiss (Doc. 6). For the reasons set forth below, the Court will grant Defendants' motion but will grant Plaintiff leave to file an Amended Complaint.

### II. Factual Allegations and Procedural History

Plaintiff is a police officer with the Borough of Forty Fort (Complaint, Doc. 1, at ¶ 10), and Defendants are Frederick Lahovski, the Police Chief, and Joe Chacke, the Borough Council President. (*Id.* at ¶¶ 2-3).

Plaintiff's Complaint makes the following allegations: on March 4, 2012, "Defendants issued an Order that specifically suppressed First Amendment speech, including but not limited to reporting misconduct of the Police Chief, by mandating that Plaintiff notify the Police Chief 'in writing' before he is allowed to talk with the Mayor or any Council member." (*Id.* at ¶ 7). In response to this order, "Plaintiff spoke out against his free speech being

suppressed" because "he was restricted in his right as a citizen to speak with the Mayor, who runs the Police Department, and Borough Council Members who run the town." (*Id.* at ¶ 8).

On May 21, 2012, "abiding by the [order], Plaintiff requested 'in writing' to speak with the Mayor about upcoming borough events due to the Memorial Day Parade and centennial celebration." (*Id.* at ¶ 9). However, Defendant Lahovski denied Plaintiff's request and instead "ordered Plaintiff to complete illegal tasks, such as posting flyers on telephone polls in violation of Forty Fort's own Borough Code § 6-601," and also ordered "him to canvass the neighbor for information concerning the owner of stolen sunglasses and eye glasses, and not do his normal Police patrol activities while all other officers did their normal Police patrol activities." (*Id.* at ¶ 10). Plaintiff thereafter "reported such mandating of illegal activities to a Borough Official. That same Borough Official confirmed Plaintiff's assessment that he was being retaliated against for his Free Speech." (*Id.* at ¶ 11).

Finally, "Plaintiff, through counsel, requested that Defendants cease-and-desist Plaintiff's free speech suppression and retaliation; and in turn and out of spite Defendants ordered an 'internal investigation' on Plaintiff." (*Id.* at ¶ 12). Plaintiff further alleges that Defendants Lahovski and Chacke "were acting in conspiracy to violate Plaintiff's First Amendment rights and causing harm to Plaintiff." (*Id.* at ¶ 13).

Plaintiff brought this action under 42 U.S.C. § 1983, alleging that Defendants retaliated against him for exercising his First Amendment free speech rights (Count I) and

2

that Defendants' "Suppression Order" unconstitutionally restricts those free speech rights (Count II). This Court has subject-matter jurisdiction under 28 U.S.C. § 1331, and venue is proper under 28 U.S.C. § 1391(b).

## III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "[W]hen presented with a motion to dismiss for failure to state a claim, . . . [the] Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (citing *Iqbal*, 556 U.S. at 678). The "Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Id.* at 211.

District courts confronted by a motion to dismiss should engage in a two-step analysis. First, the district court should accept all well-pleaded facts as true, but may reject mere legal conclusions. Second, the district court should then determine whether the facts as asserted, establish a "plausible claim for relief." *Iqbal*, 556 U.S. at 678. Thus, a complaint must "show" an entitlement for relief with facts, as a mere allegation that a plaintiff is entitled

3

to relief is insufficient to withstand a motion to dismiss. See *Phillips v. Co. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir. 2008). As the Supreme Court noted in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 678. This "plausibility" determination will be a "context- specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.; see also Fowler*, 578 F.3d at 210-11.

## IV. Analysis

### Defendants' Awareness of Plaintiff's Protected Conduct

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id* (internal citations and quotation marks omitted). Furthermore, "[i]t is only intuitive that for protected conduct to be a substantial or motivating factor in a decision, the decisionmakers must be aware of the protected conduct." *Ambrose v. Twp. of Robinson*, 303 F.3d 488, 493 (3d Cir. 2002).

Plaintiff brings a First Amendment retaliation claim against Defendants Lahovski and Chacke for various expressions of speech, including when Plaintiff "spoke out against his

4

free speech being suppressed by the First Amendment Suppression Order"[1] because he "was restricted in his right as a citizen to speak with the Mayor, who runs the Police Department, and Borough Council Members who run the town." (Compl. at ¶ 8). Likewise, Plaintiff claims that after he "reported" Defendant Lahovski's instructions to post flyers on telephone polls in violation of the borough code "to a Borough Official[, that] same Borough Official confirmed Plaintiff's assessment that he was being retaliated against for his Free Speech." (*Id.* at ¶ 11).

The Complaint does not state to whom Plaintiff "spoke out" or whether Defendants were aware of Plaintiff's speech. Nor does Plaintiff identify the "Borough Official" to whom he alleges he "reported such mandating of illegal activities." (Compl. at ¶ 11). In addition, to the extent that Plaintiff is asserting that his report of Defendant Lahovski's conduct to an unnamed Borough Official at an unknown time was also the source of retaliation, Plaintiff has not alleged that either Defendant was aware of his "report." Defendants could not have retaliated against Plaintiff if they were unaware of his speech after he "spoke out" against the "First Amendment Suppression Order" when Defendants allegedly retaliated against him by ordering him to engage in illegal or questionable activities, or after he reported Defendant Lahovski's alleged retaliation to a Borough Official. Therefore, neither of these two instances of speech as alleged can support a claim of First Amendment retaliation.

---

[1] From Defendants' brief in support of the motion to dismiss, it appears that this "Suppression Order" applied to all members of the Forty Fort police force and was not specific to Plaintiff. Neither did the order apply to members of the general public. (Doc. 7, at 5). Plaintiff does not disagree with this assessment of the order in his brief in opposition, but if it is incorrect, Plaintiff should so clarify in his Amended Complaint. Thus, the Court directs Plaintiff to state in greater detail the scope of the "Suppression Order" in his Amended Complaint.

5

## Plaintiff's Speech as a Police Officer

Plaintiff also alleges that Defendant Lahovski retaliated against him when (1) Plaintiff complied with the "Suppression Order" and requested in writing to speak with the Mayor, and (2) when Plaintiff requested that both Defendants cease and desist in suppressing his First Amendment rights.

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S. Ct. 1951. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418, 126 S. Ct. 1951.

The Court construes the Complaint as asserting that Plaintiff's attempt to speak with the Mayor was in Plaintiff's capacity as a citizen and not as a police officer. "To be protected, the speech must implicate a matter of public concern . . . . Speech implicates a matter of public concern if the content, form, and context establish that the speech involves

6

a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146-148, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). For instance, speech may be a matter of public concern when the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684).[2]

Plaintiff avers that he "abid[ed] by" the "Suppression Order" when he requested in writing to speak with the Mayor, but Defendant Lahovksi denied the request and retaliated against him for making the request by assigning him to perform illegal duties. (Compl. at ¶ 8). This statement produces a paradox: essentially, Plaintiff asserts that though the "Suppression Order" applied to him as a police officer of the Borough of Forty Fort *in the course of his employment*, Defendant Lahovski denied Plaintiff's written request to speak *as a citizen* with the Mayor. This inconsistency in Plaintiff's pleadings may possibly be resolved by an amendment to the Complaint, but at present, the Complaint cannot be said to state the cause of action Plaintiff would like to assert.

Furthermore, the Complaint states that Plaintiff wished to speak to the Mayor regarding the upcoming "Memorial Day Parade and centennial celebration," (Compl. at ¶ 9), and not necessarily regarding any "misconduct" on the part of either defendant. Therefore, Plaintiff's speech - his request to speak to the Mayor - was related to Plaintiff's duties as a

---

[2] "[I]nternal complaints about workplace management and matters that are articulated solely because of their personal effect on the employee are not protected speech." *Garcia v. Newtown Twp.*, No. 11-3190, 2012 WL 1854136, at *4 (3d Cir. May 22, 2012) (citing to *Garcetti* and *Foraker*).

police officer and does not appear to be a matter of public concern. The same is true for Plaintiff's cease-and-desist request to Defendants. *See Garcetti*, 547 U.S. at 421, 126 S. Ct. 1951 ("The controlling factor in Ceballos' case is that his expressions were made pursuant to his duties as a calendar deputy").

Rather, these instances of speech appear to be unprotected as a matter of law because they were related to Plaintiff's workplace duties and were made "up the chain of command." *See, e.g., Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007), *abrogated on other grounds by Borough of Duryea v. Guarnieri*, -- U.S. --, 131 S. Ct. 2488, 180 L. Ed. 2d 408 (2011) ("Price and Warren were acting within their job duties [as state troopers and firearms instructors] when they expressed their concerns [about safety at the firing range] up the chain of command. . . ."); *Hill v. Borough of Kutztown*, 455 F.3d 225, 242 (3d Cir. 2006) (concluding that a borough manager's reports up the chain of command about the mayor's alleged harassment of borough employees were not protected speech because he made the reports, as he conceded in the complaint, "as part of his duties as Manager.").[3]

The Complaint also is devoid of any allegation that Plaintiff attempted to make public his objections to the "Suppression Order" or his reports of any alleged retaliation that Defendants engaged in against him. *See Gorum*, 561 F.3d at 187 (affirming district court's

---

[3] Citing to *Foraker* and *Hill*, the Third Circuit has said "[w]e have consistently held that complaints up the chain of command about issues related to an employee's workplace duties—for example, possible safety issues or misconduct by other employees—are within an employee's official duties." *Morris v. Philadelphia Hous. Auth.*, No. 11-3334, 2012 WL 2626991, at * 2 (3d Cir. July 6, 2012). "Admittedly, . . . there is a social good that comes from internal reporting of misconduct up the chain of command. The Supreme Court has decided, however, that we should not constitutionalize management disputes between the government and its employees." *Id.* at *3 (internal citations and quotation marks omitted).

8

grant of summary judgment in favor of defendant and holding that a public employee's internal complaint is not protected by the First Amendment because "[t]here is no evidence in the record that [the employee] even made a public statement. There is no proof that he thought any public policy issues were at stake.").[4]

Though it is unclear who the intended audience was when Plaintiff "spoke out" against the Suppression Order,[5] Plaintiff filed his written request with Defendant Lahovski, reported Defendant Lahovski's alleged retaliation to an unnamed Borough Official,[6] and sent a cease-and-desist request directly to Defendants. (Compl. at ¶¶ 8-12). There is no allegation that Plaintiff ever made his complaints public which indicates that he considered the speech as a matter of purely private, not public, concern. Rather, as far as the Court can glean from the Complaint, all of Plaintiff's speech activities remained internal when he objected to the order and complained of retaliation.

---

[4] *Emigh v. Steffee*, 442 F. App'x 660, 665 (3d Cir. 2011) (citing *Gorum* and finding that the plaintiff-employee "did not indicate that he wanted the public to learn of Fulmer's purported misconduct [because] [t]he BPR complaint was filed internally with the PSP, and handled in accordance with the PSP's internal operating procedures."); *see also Knight v. Drye*, 375 F. App'x 280 (3d Cir. 2010), *cert. denied*, 131 S. Ct. 463, 178 L. Ed. 2d 288 (2010) (affirming district court's grant of summary judgment in favor of defendants).

> Knight's complaint up the chain of command to Officer Milligan and Police Chief Campbell is not speech protected by the First Amendment. . . . Although Knight argues that his report should be protected by the Third Circuit's recent pronouncement in *Reilly v. City of Atlantic City*, 532 F.3d 216 (3d Cir. 2008), his reliance on that case is misplaced. In *Reilly*, we found that the truthful testimony by a police officer in court constituted "citizen speech" and was therefore precluded from the "official duties" doctrine set forth in *Garcetti*. *Reilly*, 532 F.3d at 231. However, Knight's *out-of-court statements* to his superiors do not fall into this category.

*Knight*, 375 F. App'x at 282-83 (emphasis added).

[5] Construing the factual allegations in the Complaint in the light most favorable to Plaintiff, the Court assumes the general public was the intended audience. However, there is still no showing that Defendants were aware of Plaintiff speaking out against the "Suppression Order."

[6] Though there is no allegation that this Borough Official was within the "chain of command," Plaintiff made the report within the Borough government, not publicly.

9

Thus, because Plaintiff's speech pertained to his workplace duties and because the speech remained internal at all times, as a matter of law, Plaintiff's speech was not protected. See Gorum, 561 F.3d at 184.

### Defendant Borough Council President Chacke

Plaintiff next asserts that after he requested that Defendants cease and desist their suppression of Plaintiff's free speech rights and retaliation against him, they "ordered an 'internal investigation' on Plaintiff." (Compl. at ¶ 12). The Complaint also states that "Defendants issued" the "Suppression Order" on March 4, 2012. (Id. at ¶ 7). However, the Complaint states that the Mayor "runs the Police Department," whereas the "Borough Council Members . . . run the town." (Id. at ¶ 8). Therefore, the Complaint is internally inconsistent. It does not appear that Defendant Chacke, the Borough Council President, had any authority to issue either the "Suppression Order" or an "internal investigation" because those acts would fall under either the Mayor's or Defendant Lahovski's purview.

Because it appears from the Complaint that Defendant Chacke could not have taken any action against Plaintiff, he could not have been personally involved in any actions taken against Plaintiff, and he is, therefore, not a proper defendant in the case. See Argueta v. United States Immigration and Customs Enforcement, 643 F.3d 60, 72 (3d Cir. 2011). However, Plaintiff will have an opportunity to amend his Complaint to allege any actions that Defendant Chacke did take against him, or to set forth any allegations of the authority of the

Borough Council President to order or to engage in the actions attributed to him in the Complaint.

## § 1983 Conspiracy Claim

Finally, to the extent that Plaintiff is alleging a conspiracy claim against the defendants, Plaintiff must allege a conspiracy claim as a count separate and distinct from his First Amendment claim in Count I. "In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federal protected right." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 254 (3d Cir. 1999). "In addition, there must be evidence of actions taken in concert by defendants with the specific intent to violate that right." *Crist v. Phelps*, 810 F. Supp. 2d 703, 711 (D. Del. 2011). However, "a § 1983 conspiracy claim only arises when there has been an actual deprivation of a right." *Perano v. Twp. of Tilden*, 423 F. App'x 234, 239 (3d Cir. 2011) (citing *Andree v. Ashland Cnty.*, 818 F.2d 1306, 1311 (7th Cir. 1987)).

Therefore, if Plaintiff wishes to pursue a separate conspiracy claim, he must show that Defendants Lahovski and Chacke acted in concert with the specific intent to violate his First Amendment rights by alleging facts to show the conspiracy, the concerted action in furtherance of the conspiracy, and Defendants' specific intent to so act.

## Leave to Amend

In the event that the Court finds the Complaint to be legally deficient, Plaintiff has requested leave to amend. (Doc. 10, at 15). The Third Circuit has held that "if a complaint

11

is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (2011) (internal citations and quotation marks omitted).

Though the Complaint currently fails to state a claim upon which relief may be granted under Plaintiff's First Amendment retaliation claim, Plaintiff may be able to allege sufficient facts to raise such a claim if he can show that he spoke as a citizen on a matter of public concern and that Defendants retaliated against him for that speech.

Thus, consistent with the above Opinion, the Court directs Plaintiff to make the following amendments to his Complaint: (1) allege facts sufficient for the Court to conclude that Defendants were aware of the speech Plaintiff engaged in related to the "Suppression Order" when Defendants retaliated against him, specifically including when he "spoke out" against the order and when he "reported" Defendant Lahovski's retaliatory conduct to a Borough Official; (2) allege facts showing that Plaintiff's speech was as a citizen and not as an employee;[7] (3) allege facts showing how Defendant Chacke was personally involved in any actions taken against Plaintiff, given his apparent lack of authority to do so based on the current wording of the Complaint; and (4) in a count separate and distinct from Counts I and II, allege facts supporting the existence of a conspiracy between Defendants Lahovski and Chacke to deprive Plaintiff of his First Amendment right of free speech.

---

[7] These amendments should include clarifying statements as to the scope of the "Suppression Order."

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss but also will grant Plaintiff leave to file an Amended Complaint. A separate Order follows.

_____
Robert D. Mariani
United States District Judge