# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PETER LAKKIS | : |
| Plaintiff | : |
| v. | : 3:12-CV-1024 |
| | : (JUDGE MARIANI) |
| FREDERICK LAHOVSKI and | : |
| JOE CHACKE | : |
| Defendants | : |

## MEMORANDUM OPINION

### I. Introduction and Procedural History

Previously, the Court granted Defendants' Motion to Dismiss (Doc. 6) in a Memorandum Opinion and Order dated November 5, 2012. (Docs. 15, 16). The Court, however, granted Plaintiff leave to file an Amended Complaint which conformed to the requirements set forth in the Opinion. Plaintiff thereafter filed an Amended Complaint on November 20, 2012. (Doc. 17).

Before the Court is Defendants' Motion to Dismiss Plaintiff's Amended Complaint (Doc. 18). For the reasons set forth below, the Court will grant Defendants' motion but will grant Plaintiff leave to file a Second Amended Complaint.

### II. Factual Allegations

Plaintiff is a police officer with the Borough of Forty Fort (Amended Complaint ("Am. Compl.", Doc. 17, at ¶ 11), and Defendants are Frederick Lahovski, the Police Chief, and Joe Chacke, the Borough Council President. (*Id.* at ¶¶ 2-3).

Plaintiff's Amended Complaint makes the following allegations: on March 4, 2012, "Defendants issued an Order that specifically suppressed First Amendment speech, including but not limited to reporting misconduct of the Police Chief, by mandating that Plaintiff notify the Police Chief 'in writing' before he is allowed to talk with the Mayor or any Council member." (*Id.* at ¶ 7). In response to this order, "Plaintiff spoke out against his free speech being suppressed" because "he was restricted in his right as a citizen to speak with the Mayor, who runs the Police Department, and Borough Council Members who run the town." (*Id.* at ¶ 9).

On May 21, 2012, "abiding by the [order], Plaintiff requested 'in writing' to speak with the Mayor about upcoming borough events due to the Memorial Day Parade and centennial celebration" regarding "the public safety issue surrounding the centennial celebration based on Defendant Lahovski's misconduct." (*Id.* at ¶ 10). However, "[t]hat same day," Defendant Lahovski denied Plaintiff's request and instead "ordered Plaintiff to complete illegal tasks, such as posting flyers on telephone polls in violation of Forty Fort's own Borough Code § 6-601," and "to canvass the neighbor for information concerning the owner of stolen sunglasses and eye glasses, and not do his normal Police patrol activities while all other officers did their normal Police patrol activities." (*Id.* at ¶ 11).

In response to Defendant Lahovski's allegedly retaliatory conduct, on May 23, 2012, Plaintiff contacted "the Mayor directly through a text message about Defendant Lahovski['s] request for him to perform illegal activities, . . . Specifically, Plaintiff texted 'I need to speak

2

to you at some point. The Chief has advised me to partake in illegal activity. I have no one else to go to.'" (*Id.* at ¶ 12). Ultimately, "Plaintiff spoke with the Mayor about Defendant Lahovski's official misconduct of requesting him to perform illegal acts as well as the public safety issue related to the centennial celebration, both of which are matters of public concern as well as him speaking as a citizen." (*Id.* at ¶ 13). "The Mayor confirmed Plaintiff's assessment that he was being retaliated against for his Free Speech." (*Id.* at ¶ 15).

"Defendants were aware of Plaintiff's protected speech of reporting Police Chief's official misconduct since a meeting was called and held on May 24, 2012, about Plaintiff's complaints over his free speech suppression and the illegal activity," and both defendants "were present at that meeting." (*Id.* at ¶¶ 16-17).

Finally, "Plaintiff, through counsel, requested that Defendants cease-and-desist Plaintiff's free speech suppression and retaliation; and in turn and out of spite Defendants ordered an 'internal investigation' on Plaintiff." (*Id.* at ¶ 18). "Prior to ordering the "internal investigation", Defendant Lahovski contacted Defendant Chacke on the telephone." (*Id.* at ¶ 20).

Plaintiff is suing Defendants under 42 U.S.C. § 1983, alleging that they retaliated against him for engaging in First Amendment protected speech (Count I), that their "Suppression Order" unconstitutionally restricts those free speech rights because it is void

3

for vagueness and is overbroad (Count II), and that they conspired to begin an "internal investigation" against Plaintiff in retaliation for his speech.

### III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

4

> *Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id* (internal citations and quotation marks omitted).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen

5

addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S. Ct. 1951. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418, 126 S. Ct. 1951.

<u>Count I: First Amendment Retaliation</u>

Plaintiff brings a First Amendment retaliation claim against Defendants Lahovski and Chacke for various expressions of speech, including when Plaintiff "spoke out against his free speech being suppressed by the First Amendment Suppression Order" because he "was restricted in his right as a citizen to speak with the Mayor, who runs the Police Department, and Borough Council Members who run the town." (Am. Compl. at ¶ 9).

Likewise, Plaintiff claims that after he "reported" Defendant Lahovski's instructions to post flyers on telephone polls in violation of the borough code, he contacted "the Mayor directly through a text message about Defendant Lahovski['s] request for him to perform illegal activities, . . . Specifically, Plaintiff texted 'I need to speak to you at some point. The Chief has advised me to partake in illegal activity. I have no one else to go to.'" (*Id.* at ¶ 12).

6

Ultimately, "Plaintiff spoke with the Mayor about Defendant Lahovski's official misconduct of requesting him to perform illegal acts as well as the public safety issue related to the centennial celebration, both of which are matters of public concern as well as him speaking as a citizen." (*Id.* at ¶ 13). "The Mayor confirmed Plaintiff's assessment that he was being retaliated against for his Free Speech." (*Id.* at ¶ 15).

Finally, Plaintiff alleges that the cease-and-desist letter he sent to Defendants through his attorney was an instance of protected speech for which Defendants retaliated against him by beginning an internal investigation. (*Id.* at ¶¶ 18-20).

"To be protected, the speech must implicate a matter of public concern . . . . Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146-148, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). For instance, speech may be a matter of public concern when the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684).

Plaintiff avers that he "abid[ed] by" the "Suppression Order" when he requested in writing to speak with the Mayor, but Defendant Lahovski denied the request and retaliated against him for making the request by assigning him to perform illegal duties. (Am. Compl.

7

at ¶ 10). Again, this statement produces a paradox: essentially, Plaintiff asserts that though the he "abided by" the "Suppression Order" (which Plaintiff has not averred applied exclusively to him as opposed to all Borough police officers), Defendant Lahovski denied Plaintiff's written request to speak *as a citizen* with the Mayor. Plaintiff has failed to cure this inconsistency in his Amended Complaint.

He also alleges that he requested to speak to the Mayor regarding "the public safety issue surrounding the centennial celebration based on Defendant Lahovski's misconduct" (*id.* at ¶ 10) without identifying what either the public safety issue or Lahovski's misconduct was.[1] These are merely conclusory allegations and legal conclusions, much like Plaintiff's statement that "Plaintiff spoke with the Mayor about Defendant Lahovski's official misconduct of requesting him to perform illegal acts as well as the public safety issue related to the centennial celebration, *both of which are matters of public concern as well as him speaking as a citizen.* (*Id.* at ¶ 13) (emphasis added). As yet, Plaintiff has not pled sufficient *facts* for the Court to conclude he was speaking as a citizen.

In addition, previously, the Court found that Plaintiff's cited "instances of speech appear to be unprotected as a matter of law because they were related to Plaintiff's workplace duties and were made 'up the chain of command.'" (Doc. 15, at 8) (citations to law omitted). Plaintiff amended his complaint to state that he contacted the Mayor "directly through a text message." (Am. Compl. at ¶ 12). Plaintiff then argues in his Brief in

---

[1] Plaintiff distinguishes between Lahovski's alleged misconduct in paragraph 10 and Lahovski's alleged misconduct in directing him to perform "illegal tasks" in paragraphs 12 and 13.

8

Opposition to Defendants' Motion to Dismiss that he "used his own personal cell phone when he went around the chain of command, to report Defendant Lahovski's official misconduct" when he "was on his own time." (Doc. 21, at 4, 10). Plaintiff's Brief in Opposition contains factual allegations not contained in his Amended Complaint which would aid the Court in deciding Defendants' Motion to Dismiss. Plaintiff's brief, however, is not a pleading from which the Court can draw out facts to rely on in deciding Defendants' motion. See *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97, n.6 (3d Cir. 2010) ("[A] district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings."). Moreover, these statements in Plaintiff's brief are insufficient to show that he spoke as a citizen on a matter of public concern.

Furthermore, the Court is still at a loss to know to whom Plaintiff spoke or what he said when he "spoke out against his free speech being suppressed" because "he was restricted in his right as a citizen to speak with the Mayor, who runs the Police Department, and Borough Council Members who run the town." (Am. Compl. at ¶ 9). Through such conclusory allegations, Plaintiff does not show how he was "restricted in his right as a citizen."

Finally, the Court notes that while Plaintiff sent a letter through his attorney to Defendants to cease and desist from suppressing Plaintiff's free speech rights and Defendants allegedly ordered an internal investigation against him in retaliation for sending the letter, he has not alleged that he suffered any discipline as a result of the investigation.

See *Herman v. Hosterman*, No. 1:11-CV-898, 2011 WL 4974184, at *4 (M.D. Pa. Oct. 19, 2011) (granting the defendants' motion to dismiss without prejudice because the police officer-plaintiff's "allegation of an internal investigation cannot rise to actionable retaliatory conduct because the investigation, admittedly, did not result in any adverse employment action.").[2] If Plaintiff did suffer an adverse action as a result of Defendants' allegedly retaliatory internal investigation, he should so state in his Second Amended Complaint.

For all of the foregoing reasons, the Court will dismiss Count I without prejudice and grant leave to amend.

## Count II: Void for Vagueness and Overbreadth

In the Court's previous Opinion, it directed "Plaintiff to state in greater detail the scope of the 'Suppression Order' in his Amended Complaint." (Doc. 15, at 5, n.1). Defendants' Brief in Support of the Motion to Dismiss states that the "Order applied only to Forty Fort police officers and a copy of the Order was provided to all employees." (Doc. 20 at 16). Yet, the Amended Complaint does not identify to whom the "Suppression Order" applied or its terms, and so the Court will dismiss Count II without prejudice.

Before the Court can determine whether the "Suppression Order" is void for vagueness or is overbroad, it must first know what it says and to whom it applied.

---

[2] Judge Kane also found that

> These allegations are precisely the type of *de minimis* allegations that . . . are insufficient to support a claim for First Amendment retaliation. . . . *Richards v. Conn. Dep't of Corr.*, 349 F. Supp. 2d 278, 289–290 (D. Conn. 2004) (concluding that an internal investigation "though it may have been inappropriate, led to no actions against" the plaintiff and thus could not support a First Amendment retaliation claim).

*Id.* at *3.

Therefore, the Court directs Plaintiff to file a copy of the "Suppression Order" with his Second Amended Complaint.

### Defendant Borough Council President Chacke

Plaintiff asserts that "Defendants issued" the "Suppression Order" on March 4, 2012. (Am. Compl. at ¶ 7). After he requested that Defendants cease and desist their suppression of Plaintiff's free speech rights and retaliation against him, they "ordered an 'internal investigation' on Plaintiff." (Id. at ¶ 18). "Prior to ordering the 'internal investigation,' Defendant Lahovski contacted Defendant Chacke on the telephone." (Id. at ¶ 20). These are the only allegations regarding any retaliatory behavior that Chacke took against Plaintiff, and paragraph 20 is the only new allegation that Plaintiff has added to his Amended Complaint regarding Defendant Chacke.

However, the Amended Complaint continues to state that the Mayor "runs the Police Department," whereas the "Borough Council Members . . . run the town." (Id. at ¶ 9). Therefore, it remains internally inconsistent. According to Plaintiff's own words, Defendant Chacke, the Borough Council President, had no authority either to issue the "Suppression Order" or begin an "internal investigation" because those acts would fall under either the Mayor's or Defendant Lahovski's purview.

Because Defendant Chacke could not have effected any retaliatory disciplinary action against Plaintiff, he is not a proper defendant in the case, even if Defendant Lahovski did obtain "permission" to launch an internal investigation against Plaintiff. See 53 P.S. §

11

46121 (granting Borough Council *collectively* "the power to remove, suspend or reduce in rank any police officer"). Thus, the Court will dismiss Defendant Chacke from the case without prejudice. While Plaintiff already has attempted and failed to cure this pleading defect, the Court will nonetheless grant him leave to amend a second time.

### Count III: 42 U.S.C. § 1983 Conspiracy Claim

Finally, because Defendant Chacke has been dismissed without prejudice, the Court will also dismiss without prejudice Plaintiff's claim for conspiracy to violate his First Amendment free speech rights under § 1983 (Count III). "To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)). Defendant Lahovski cannot have engaged in a conspiracy by himself, so the Court will dismiss Count III without prejudice with leave to amend a second time.

### Plaintiff's Citations to Law in the Amended Complaint

The Court will grant Defendants' Motion to Strike legal references from the Amended Complaint. Plaintiff is directed to omit any citations to law and legal argument from his Second Amended Complaint (*e.g.*, Am. Compl., footnotes 1, 2, and 3; *see also* ¶¶ 8, 19).

## Leave to Amend

Though Plaintiff has not requested leave to amend, the Court will grant him leave to do so. The Third Circuit has held that "if a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) *cert. denied*, 131 S. Ct. 1798, 179 L. Ed. 2d 655 (2011) (internal citations and quotation marks omitted).

Failure to cure the above-mentioned defects pertaining to Counts I, II, and III shall result in dismissal with prejudice of those facts alleged in support of each Count that are deemed insufficient, which may result in dismissal with prejudice of the Second Amended Complaint entirely. The Court further directs Plaintiff to attach a copy of the Suppression Order to his Second Amended Complaint so it can assess whether the Suppression Order is vague or overbroad.

## V. Conclusion

For the foregoing reasons, the Court will grant Defendants' motion to dismiss but also will grant Plaintiff leave to file a Second Amended Complaint. A separate Order follows.

Robert D. Mariani
United States District Judge