THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **PETER LAKKIS** | : |
| | : |
| **Plaintiff** | : |
| **v.** | : **3:12-CV-1024** |
| | : **(JUDGE MARIANI)** |
| **FREDERICK LAHOVSKI** and | : |
| **JOE CHACKE** | : |
| | : |
| **Defendants** | : |

## MEMORANDUM OPINION

### I.  Introduction and Procedural History

Previously, the Court granted Defendants' Motion to Dismiss (Doc. 6) in a

Memorandum Opinion and Order dated November 5, 2012. (Docs. 15, 16). The Court,

however, granted Plaintiff leave to file an Amended Complaint which was to conform to the

requirements set forth in the Opinion. Plaintiff thereafter filed an Amended Complaint on

November 20, 2012. (Doc. 17). Defendants then filed a Motion to Dismiss Plaintiff's

Amended Complaint (Doc. 18). In a Memorandum Opinion and Order dated May 30, 2013

(Docs. 37, 38), the Court granted Defendants' motion but granted Plaintiff leave to file a

Second Amended Complaint.

On June 14, 2013, Plaintiff filed his Second Amended Complaint (Doc. 40), and

Defendants again moved to dismiss (Doc. 41). The parties have fully briefed the motion,

and it is ripe for decision. For the reasons set forth below, the Court will grant in part and

deny in part Defendants' motion.

## II. Factual Allegations

Plaintiff is a police officer with the Borough of Forty Fort (Second Amended

Complaint, Doc. 40, at ¶¶ 1, 11), and Defendants are Frederick Lahovski, the Police Chief,

and Joe Chacke, the Borough Council President. (*Id.* at ¶¶ 2, 5).

Plaintiff's Second Amended Complaint makes the following allegations: on March 4,

2012, "Defendants issued an Order that specifically suppressed First Amendment speech,

including but not limited to reporting misconduct of the Police Chief, by mandating that

Plaintiff notify the Police Chief 'in writing' before he is allowed to talk with the Mayor or any

Council member." (*Id.* at ¶ 9). The Special Order Memorandum was from Defendant

Lahovski and addressed to "All Personnel, Forty Fort Borough Police Department" and

stated:

Effective immediately, any time a member of the police department wishes to speak with the Mayor and/or any member of the Borough Council concerning a function of the police department, the member is required to notify the Chief of Police.

The notification must be in writing and presented in person prior to contacting the aforementioned persons. The subject of the intended contact does not need to be listed unless specifically requested by the Chief of Police.

If a member of the police department is contacted by the Mayor and/or any member of Borough Council concerning police department function, the member is required to notify the Chief of Police in writing immediately after the contact.

Grievances, Unfair Labor Practices, S.O. 11-003, and liaison assignments directed by the Chief of Police are exempt from this order.

Any question, please see me.

(March 4, 2012 Special Order Memorandum, Doc. 39-1).

On May 21, 2012, "abiding by the [order], Plaintiff requested 'in writing' to speak with the Mayor about upcoming borough events due to the Memorial Day Parade and Centennial Celebration" regarding "the public safety issue surrounding the Centennial Celebration based on Defendant Lahovski's misconduct." (*Id*. at ¶ 19). However, "[t]hat same day," Defendant Lahovski denied Plaintiff's request and instead "ordered Plaintiff to complete illegal tasks, such as posting flyers on telephone polls in violation of Forty Fort's own Borough Code § 6-601," and "to canvass the neighbor[hood] for information concerning the owner of stolen sunglasses and eye glasses, and not do his normal Police patrol activities while all other officers did their normal Police patrol activities." (*Id*. at ¶ 21). In Lahovski's denial of Plaintiff's request, Lahovski stated, "You may not have permission for an open ended, catch all conversation using the statement, 'including but not limited to'." (*Id*. at ¶ 23). Had Plaintiff been allowed to speak to the Mayor, he "would have disclosed that there was going to be no police protection at a major public event, the Centennial Celebration, which could result in a tragedy, such as the Boston bombing." (*Id*. at ¶ 20).

"After contemplating the situation and understanding the gravity of [the] matter," on May 23, 2012, Plaintiff contacted "the Mayor directly through a text message about Defendant Lahovski's request for him to perform illegal activities, . . . Specifically, Plaintiff texted 'I need to speak to you at some point. The Chief has advised me to partake in illegal activity. I have no one else to go to.'" (*Id*. at ¶¶ 25-26). "Plaintiff used his own personal cell

phone to make the text and was not working for the Borough of Fort-Forty at the time he made the text." (*Id*. at ¶ 27).

Ultimately, Plaintiff "spoke with the Mayor about Defendant Lahovski's official misconduct of requesting police officers [to] perform illegal acts as well as the public safety issue related to the Centennial Celebration." (*Id*. at ¶ 30). "The Mayor confirmed Plaintiff's assessment that he was being retaliated against for his Free Speech." (*Id*. at ¶ 35). "When Plaintiff spoke with the Mayor, he was off-duty and on his personal cell phone." (*Id*. at ¶ 31).

"Defendants were aware of Plaintiff's protected speech of reporting [the] Police Chief's official misconduct since a meeting was called and held on May 24, 2012, about Plaintiff's complaints over his free speech suppression and the illegal activity," and both defendants "were present at that meeting." (*Id*. at ¶¶ 36-37).

Finally, "[o]n May 25, 2012, Plaintiff, through counsel, requested that Defendants cease-and-desist Plaintiff's free speech suppression and retaliation; and in turn and out of spite Defendants ordered an 'internal investigation' on Plaintiff." (*Id*. at ¶ 38). "Prior to ordering the 'internal investigation,' Defendant Lahovski contacted Defendant Chacke on the telephone." (*Id*. at ¶ 40). "Plaintiff was internally investigated and has not been cleared of that investigation, which could result in termination." (*Id*. at ¶ 41).

"Plaintiff was required to have his union representative with him when Defendant Lahovski conducted his internal investigation." (*Id*. at ¶ 42). "Although Defendant Lahovski was provided with proof from the Luzerne County District Attorney's Office that Plaintiff had,

4

indeed, been present for a hearing, Defendant Lahovski contacted the Luzerne County Sheriff's Office seeking video surveillance on Plaintiff." (*Id.* at ¶ 44). "To this day, over a year later, Plaintiff has not been told of the results of the internal investigation and all the documents related to his alleged wrongdoing are part of his employment record." (*Id.* at ¶ 47). "Plaintiff was brought up on trumped up charges, which he had to defend and are now part of his employment record for all current and future employers to see, and may cause him to miss out on future employment opportunities." (*Id.* at ¶ 49).

In addition to this internal investigation, Defendant Lahovski ignored Plaintiff's "requests for on-the-job guidance, such as whether he could leave his shift without the Pennsylvania State Police covering and also when he needed to call off." (*Id.* at ¶ 51). "In retaliation for Plaintiff's engaging in free speech," Plaintiff was: singled out and ordered to issue parking tickets, denied training, denied extra duty and compensatory time, denied pay for his participation in a drug investigation with the Attorney General's Office Drug Task Force, whereas other officers were not treated in this fashion. (*Id.* at ¶¶ 52-55).

Plaintiff is suing Defendants under 42 U.S.C. § 1983, alleging that they retaliated against him for engaging in First Amendment protected speech (Count I), that their "Suppression Order" unconstitutionally restricts those free speech rights because it is a prior restraint, void for vagueness, and is overbroad (Count II), that they conspired to begin an "internal investigation" against Plaintiff in retaliation for his speech (Count III), and they retaliated against him for filing this lawsuit (Count IV) by refusing to allow him "to view his

own vacation, sick and personal time records" (*id*. at ¶ 75; *see also* ¶¶ 76-77), thus forcing him to file a Right-to-Know request (*id*. at ¶ 80).

## III. Standard of Review

A complaint must be dismissed under FED. R. CIV. P. 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements. *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.

*Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013)

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## IV. Analysis

"To state a First Amendment retaliation claim, a public employee plaintiff must allege that his activity is protected by the First Amendment, and that the protected activity was a substantial factor in the alleged retaliatory action." *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009) (citing *Hill v. Borough of Kutztown*, 455 F.3d 225, 241 (3d Cir. 2006)). "The first factor is a question of law; the second factor is a question of fact." *Id* (internal citations and quotation marks omitted).

"The [Supreme] Court has made clear that public employees do not surrender all their First Amendment rights by reason of their employment. Rather, the First Amendment protects a public employee's right, in certain circumstances, to speak as a citizen

7

addressing matters of public concern." *Garcetti v. Ceballos*, 547 U.S. 410, 417, 126 S. Ct. 1951, 1957, 164 L. Ed. 2d 689 (2006). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id.* at 421, 126 S. Ct. 1951. However, if an employee speaks as a citizen on a matter of public concern, "[t]he question becomes whether the relevant government entity had an adequate justification for treating the employee differently from any other member of the general public." *Id.* at 418, 126 S. Ct. 1951.

### Count I: First Amendment Retaliation

"To be protected, the speech must implicate a matter of public concern . . . . Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146-148, 103 S. Ct. 1684, 75 L. Ed. 2d 708 (1983)). For instance, speech may be a matter of public concern when the speaker seeks to "bring to light actual or potential wrongdoing or breach of public trust" on the part of government officials. *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 170 (3d Cir. 2008) (quoting *Connick*, 461 U.S. at 148, 103 S. Ct. 1684).

In the Court's previous Memorandum Opinion and Order of May 2013, it directed Plaintiff to file a copy of the alleged "Suppression Order" to his Second Amended Complaint. (Doc. 37 at 13, Doc. 38 at ¶ 3). Plaintiff duly complied with this direction (Doc. 39-1).

After review, the Court finds that the Special Order Memorandum issued by Lahovski did nothing to restrict Plaintiff's ability to speak as a citizen. The Special Order Memorandum clearly is addressed only to "All Personnel, Forty Fort Borough Police Department," and restricts police officers from speaking "with the Mayor and/or any member of [the] Borough Council *concerning a function of the police department*." (*Id.*) (emphasis added). Contrary to Plaintiff's conclusory allegation that the order "concerned all speech that a citizen who also is a Forty-Fort Police Officer engages in and not just related to his speech as a Police Officer," (SAC at ¶ 11), the Special Order Memorandum says nothing about Plaintiff's ability to speak as a private citizen. The Special Order Memorandum also exempts "[g]rievances, Unfair Labor Practices, S.O. 11-003, and liaison assignments directed by the Chief of Police" from the order. (*Id.*). The exemptions can all be categorized as employment-related matters, which is further evidence that the so-called "Suppression Order" applied to police officers in their job capacities only.

Plaintiff alleges that he obeyed the Special Order Memorandum and requested in writing to speak to the Mayor, but Defendant Lahovski denied the request. (SAC at ¶¶ 19, 21). In retaliation for the written request, Defendant Lahovski ordered Plaintiff to engage in illegal activity, such as posting flyers on telephone poles, in violation of Forty Fort's Borough

Code. (*Id.* at ¶ 21). Plaintiff alleges that had he been allowed to speak with the Mayor, he "would have disclosed that there was going to be no police protection at a major public event, the Centennial Celebration, which could result in a tragedy, such as the Boston bombing." (*Id.* at ¶ 20).[1]

According to Plaintiff, then, he followed the instructions of the Special Order Memorandum, as he was obligated to do as an employee of the police department. The topic of his request to speak to the Mayor was the alleged lack of police protection at a large public event, a matter "concerning a function of the police department." (Doc. 39-1). If public employees speak in the course of their employment, "the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Because the Court finds that Plaintiff's speech (*i.e.*, the written request) was made as an employee, the speech was not protected. Therefore, the allegedly illegal tasks that Plaintiff was forced to perform in retaliation for making his written request do not constitute retaliation. Therefore, the Court will dismiss with prejudice those allegations of fact contained within paragraphs 9 through 24 as legally insufficient to state a cause of action.

Plaintiff further alleges that after Defendant Lahovski denied him permission to speak to the Mayor, Plaintiff contacted the Mayor around May 23, 2012 via text message on his

---

[1] Defendants have asked the Court to strike the portion of the paragraph that refers to the Boston Marathon bombing as inflammatory and misleading, given that the bombing occurred after the events giving rise to this lawsuit. The Court acknowledges the impropriety of this pleading but will dismiss the paragraph on the ground that it fails to support a First Amendment retaliation claim.

personal cell phone, explaining, "I need to speak to you at some point. The Chief has advised me to partake in illegal activity [by posting flyers on telephone poles]. I have no one else to go to." (SAC at ¶¶ 25-27). Plaintiff also informed the Mayor of his concerns about the Centennial Celebration parade. (*Id.* at ¶¶ 30, 33). The next day, "a meeting was called and held . . . about Plaintiff's complaints over his free speech suppression and the illegal activity request," and both defendants were present at the meeting. (*Id.* at ¶ 36-37).

The day after the meeting, on May 25, 2012, "Plaintiff, through counsel, requested that Defendants cease-and-desist Plaintiff's free speech suppression and retaliation; and in turn and out of spite Defendants ordered an 'internal investigation' on Plaintiff." (*Id.* at ¶ 38). Plaintiff "has not been cleared of that investigation," (*id.* at ¶ 41), and as of the filing of the Second Amended Complaint in June 2013, "Plaintiff has not been told of the results of the internal investigation." (*Id.* at ¶ 47). The internal investigation has lasted "for more than a year, which is unheard of." (*Id.* at ¶ 48).

Plaintiff's text to the Mayor and subsequent conversation with him regarding the alleged illegal tasks Lahovski directed Plaintiff to perform and Plaintiff's concerns about the parade do not implicate matters of public concern. Although the speech took place when Plaintiff was off duty, Plaintiff used his personal cell phone, and Plaintiff went outside the chain of command by going to the Mayor directly (*id.* at ¶¶ 25-27, 31), all of the speech was incident to his employment. *See Foraker v. Chaffinch*, 501 F.3d 231, 240 (3d Cir. 2007). As stated above, Plaintiff's concerns about the lack of police protection at the parade was a

matter "concerning a function of the police department," and Plaintiff's complaint about having to post flyers on telephone poles was essentially an employee grievance because he was unhappy about the "discipline" he received from Lahovski after he made his written request to speak to the Mayor.

Likewise, as the Court stated in its November 5, 2012 Memorandum Opinion (Doc. 15 at 6-10), the cease-and-desist order issued by Plaintiff's counsel to Defendants is not a matter of public concern. Plaintiff's Second Amended Complaint has not shown that the cease-and-desist order was anything other than a continuation of his employment dispute with Lahovski, which is purely a matter of private concern to Plaintiff.

Even assuming that Plaintiff did engage in protected speech when he spoke to the Mayor and issued the cease-and-desist order, he has not shown that Defendants took any *adverse* actions against him. First, while Defendants allegedly ordered an internal investigation against Plaintiff in retaliation for the above protected activity, Plaintiff has not identified the subject of the internal investigation,[2] preventing this Court from analyzing this portion of Plaintiff's First Amendment retaliation claim.

Second, the Court previously provided Plaintiff with the following direction: "[i]f Plaintiff did suffer an adverse action as a result of Defendants' allegedly retaliatory internal investigation, he should so state in his Second Amended Complaint." (May 30, 2013 Memorandum Opinion, Doc. 37 at 10). Yet, Plaintiff still has not alleged that he suffered any

---

[2] Plaintiff makes reference to his attendance at a hearing (SAC at ¶ 44), the Court is unsure of the context of this hearing.

discipline as a result of the internal investigation. *See Herman v. Hosterman*, No. 1:11-CV-898, 2011 WL 4974184, at *4 (M.D. Pa. Oct. 19, 2011) (granting the defendants' motion to dismiss without prejudice because the police officer-plaintiff's "allegation of an internal investigation cannot rise to actionable retaliatory conduct because the investigation, admittedly, did not result in any adverse employment action.")).[3]

Generally, an internal investigation alone does not constitute an adverse employee action. *See e.g., Altonen v. City of Minneapolis*, 487 F.3d 554, 560 (8th Cir. 2007) ("There is no evidence in the record that [the police officer's] position changed in any way due to the . . . investigation . . . . Internal investigations into employee complaints are not adverse employment actions when they do not result in any change in form or condition to the employee's employment"); *Ham-Jones v. United Airlines, Inc.*, No. 4:11–CV–2008, 2012 WL 4358004, at *4 (E.D. Mo. 2012) ("It is well-established in this Circuit that an internal investigation—even if it leads to a recommendation of discharge—cannot constitute a materially adverse employment action unless it results in discipline.") (listing Eighth Circuit cases); *Lewis v. State of Connecticut Dep't of Corrections*, 355 F. Supp. 2d 607, 619-620 (D. Conn. 2005).[4]

---

[3] Judge Kane also found that

> These allegations are precisely the type of *de minimis* allegations that . . . are insufficient to support a claim for First Amendment retaliation. . . . *Richards v. Conn. Dep't of Corr.*, 349 F. Supp. 2d 278, 289–290 (D. Conn. 2004) (concluding that an internal investigation "though it may have been inappropriate, led to no actions against" the plaintiff and thus could not support a First Amendment retaliation claim).

*Id.* at *3.

[4] Concluding that the

13

Plaintiff's allegations are that the investigation "could result in termination" and it "may cause him to miss out on future employment opportunities." (SAC at ¶¶ 41, 49). Such speculative allegations do not establish adverse action. Therefore, the Court also will dismiss with prejudice paragraphs 25 through 50 as insufficient to support Count I.

In addition to initiating an internal investigation of Plaintiff, Defendant Lahovski allegedly has ignored Plaintiff's "requests for on-the-job guidance, such as whether he could leave his shift without the Pennsylvania State Police covering and also when he needed to call off," has denied Plaintiff training, has denied Plaintiff "extra duty and compensatory time," and has denied Plaintiff pay for his participation in a drug investigation with the Attorney General's Drug Task Force. (*Id.* at ¶¶ 51, 53-55).

These acts, though not alleged to be related to the internal investigation, separately constitute adverse actions sufficient to support a First Amendment retaliation claim.

---

internal investigation did not conclude that Officer Lewis was at fault, it did not result in any discipline against her, and it did not result in any reduction in her pay or benefits, either during or after the investigation. In short, there is nothing in the record that shows that this internal investigation materially altered Officer Lewis' employment at all. Nor could Officer Lewis' counsel cite a single case that held that the mere participation in an internal investigation-standing alone-was an adverse employment action. Indeed, case law on this subject holds precisely the opposite. *See, e.g., Peltier v. United States*, 388 F.3d 984, 988 (6th Cir. 2004) (employee put on paid administrative leave pending the outcome of an internal investigation, who was restored to her position upon the termination of the investigation, suffered no adverse employment action); *O'Dell v. Trans World Entm't Corp.*, 153 F. Supp. 2d 378, 396 (S.D.N.Y. 2001) ("[A]n alleged deficiency in an employer's internal complaint procedure or internal investigation of a sexual harassment complaint-even if the deficiency is little more than an attempt to strengthen an employer's defense-is not a retaliatory adverse employment action."). *Cf. Jones v. Fitzgerald*, 285 F.3d 705, 715 (8th Cir. 2002) (an internal investigation is no adverse employment action where employee "suffered no material disadvantage in a term or condition of employment as a result of the investigations" in First Amendment Retaliation context); *Benningfield v. City of Houston*, 157 F.3d 369, 376 (5th Cir. 1998) (same); *Richards v. State of Connecticut Dep't of Corr.*, 349 F. Supp. 2d 278, 289-90 (D. Conn. 2004) (same).

*Id.*

However, in the Court's view, the requisite causality is in doubt. "[A] suggestive temporal proximity between the protected activity and the alleged retaliatory action can be probative of causation," *Thomas v. Town of Hammonton*, 351 F.3d 108, 114 (3d Cir. 2003), but "[e]ven if timing alone could ever be sufficient to establish a causal link, . . . the timing of the alleged retaliatory action must be 'unusually suggestive' of retaliatory motive before a causal link will be inferred." *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003).

The allegations contained within paragraphs 51 through 56 are not anchored in time so the Court can determine whether there is any unusually suggestive temporal proximity to enable a fact-finder to infer a causal link. As such, insofar as they purport to establish a First Amendment retaliation claim in Count I, they are deficient. However, giving Plaintiff the benefit of every doubt, if these allegedly retaliatory actions took place after he filed this lawsuit in May 2012 (Count IV), they may constitute adverse actions in retaliation for his protected activity in initiating suit (*see infra*), provided he can establish the requisite causation.

Therefore, the Court will dismiss with prejudice paragraphs 9 through 50 as insufficient to state or support a cause of action, but will permit paragraphs 51through 56 to stand for the moment. In a subsequent motion for summary judgment, Defendants, if they so choose, may challenge the causal link between Plaintiff's protected speech in filing this lawsuit and the allegedly retaliatory actions Defendant Lahovski took against him, as set forth in paragraphs 51 through 56. Accordingly, the Court will dismiss Count I itself.

## Count II: Void for Vagueness and Overbreadth[5]

### *Overbreadth*

The Supreme Court has held that the facial overbreadth doctrine "is, manifestly,

strong medicine" *Broadrick v. Oklahoma*, 413 U.S. 601, 615, 93 S. Ct. 2908, 37 L. Ed. 2d

830 (1973), because when a court finds a statute is facially overbroad, the effect is "to

invalidate all enforcement of that law, until and unless a limiting construction or partial

invalidation so narrows it as to remove the seeming threat or deterrence to constitutionally

protected expression." *Virginia v. Hicks*, 539 U.S. 113, 118-19, 123 S. Ct. 2191, 2196, 156

L. Ed. 2d 148 (2003) (internal citations and quotation marks omitted).  Because the

overbreadth doctrine is so drastic,

> its function, a limited one at the outset, attenuates as the otherwise
> unprotected behavior that it forbids the State to sanction moves from 'pure
> speech' toward conduct and that conduct—even if expressive—falls within the
> scope of otherwise valid criminal laws that reflect legitimate state interests in
> maintaining comprehensive controls over harmful, constitutionally unprotected
> conduct. Although such laws, if too broadly worded, may deter protected
> speech to some unknown extent, there comes a point where that effect—at
> best a prediction—cannot, with confidence, justify invalidating a statute on its
> face and so prohibiting a State from enforcing the statute against conduct that
> is admittedly within its power to proscribe. To put the matter another way,
> particularly where conduct and not merely speech is involved, we believe that
> the overbreadth of a statute must not only be real, but substantial as well,
> judged in relation to the statute's plainly legitimate sweep.

*Broadrick*, 413 U.S. at 615, 93 S. Ct. 2908.  To ensure that the costs of the doctrine "do not

swallow the social benefits of declaring a law overbroad, we have insisted that a law's

---

[5] Because the Court already has found that the Special Order Memorandum did not affect Plaintiff's speech as a citizen, it will not address Plaintiff's argument that that order was a prior restraint on his speech.

application to protected speech be substantial, not only in an absolute sense, but also relative to the scope of the law's plainly legitimate applications before applying the strong medicine of overbreadth invalidation." *Hicks*, 539 U.S. at 119-20, 123 S. Ct. 2191 (internal citations and quotation marks omitted). As a result, "a single impermissible application" is insufficient to deem a statute or policy invalid, *New York v. Ferber*, 458 U.S. 747, 772, 102 S. Ct. 3348, 73 L. Ed. 2d 1113 (1982) (internal quotation marks and citation omitted), and instead, "a law should not be invalidated for overbreadth unless it reaches a substantial number of impermissible applications." *Id.* at 771, 102 S. Ct. 3348.

The Court already has found that the Special Order Memorandum applied only to police officers acting in their public capacities, and that there were exemptions that also pertained to the officers' employment. The Special Order Memorandum in no way restricts Plaintiff's ability to speak as a citizen, so Plaintiff has failed to show that it is facially overbroad. *See Hicks*, 539 U.S. at 119, 123 S. Ct. 2191. If there is any overbreadth at all, it is insignificant in relation to the order's "plainly legitimate sweep."

### Void for Vagueness

"The prohibition against vague regulations of speech is based in part on the need to eliminate the impermissible risk of discriminatory enforcement, . . . The question is not whether discriminatory enforcement occurred here, but whether the Rule is so imprecise that discriminatory enforcement is a real possibility." *Gentile v. State Bar of Nevada*, 501 U.S. 1030, 1051, 111 S. Ct. 2720, 2732, 115 L. Ed. 2d 888 (1991) (internal citations

omitted). When presented with a void-for-vagueness challenge, a court "must ensure that a statute or standard is fair in that it is not so vague that a party would not know what conduct is prohibited." *Borden v. Sch. Dist. of Twp. of East Brunswick*, 523 F.3d 153, 166-67 (3d Cir. 2008). Thus, a statute is unconstitutionally vague when "men of common intelligence must necessarily guess at its meaning." *Broadrick*, 413 U.S. at 607, 93 S. Ct. 2908.

Plaintiff's argument that the Special Order Memorandum is void for vagueness is baseless: by its heading, it plainly applies only to Forty Fort Police Department employees. It also limits the requirement to submit written requests to matters "concerning the function of the police department."

Therefore, the Court will dismiss Count II with prejudice.

### Count III: 42 U.S.C. § 1983 Conspiracy Claim

"To demonstrate the existence of a conspiracy under § 1983, 'a plaintiff must show that two or more conspirators reached an agreement to deprive him or her of a constitutional right under color of law.'" *LeBlanc v. Stedman*, 483 F. App'x 666, 670 (3d Cir. 2012) (quoting *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993), *abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington*, 316 F.3d 392 (3d Cir. 2003)).

Plaintiff asserts that "Defendants issued" the "Suppression Order" on March 4, 2012. (SAC at ¶ 9). After he requested that Defendants cease and desist their suppression of Plaintiff's free speech rights and retaliation against him, they "ordered an 'internal

investigation' on Plaintiff." (*Id*. at ¶ 38). "Prior to ordering the 'internal investigation,' Defendant Lahovski contacted Defendant Chacke on the telephone." (*Id*. at ¶ 40).

First, because the Court has found that Plaintiff did not engage in protected activity when he contacted the Mayor, and the subsequent internal investigation by itself did not constitute adverse action, the conspiracy claim must be dismissed accordingly. Second, the Court still doubts that Defendant Chacke is a proper defendant in the case. Even if Defendant Lahovski did obtain "permission" to launch an internal investigation against Plaintiff, there is still a question as to his authority to insert himself into police employment matters. *See* 53 P.S. § 46121 (granting Borough Council *collectively* "the power to remove, suspend or reduce in rank any police officer"). Therefore, the Court will dismiss Count III with prejudice.

## Count IV: First Amendment "Violation"

A reading of Count IV leads this Court to conclude that it is another First Amendment retaliation claim. Plaintiff alleges that after he filed this lawsuit on May 31, 2012, Defendant Chacke "refus[ed] to allow Plaintiff to view his own vacation, sick and personal time records, which is against the law pursuant to 43 P.S. § 1322, Inspection of Employment Records Law." (SAC at ¶¶ 66, 75).

Specifically, around September 14, 2012, "Plaintiff requested information about his employment regarding his annual uniform allowance, status of dental coverage card, and status of personal, sick, and vacation time." (*Id*. at ¶ 76). Although the Borough Manager

19

responded to Plaintiff's request, Defendants intercepted "the envelope that the Borough
Manager had provided for Plaintiff" and withheld it. (*Id.* at ¶ 77). Furthermore, Defendant
Chacke sent the Borough Manager an e-mail "advising of possible disciplinary action
against her for . . . attempting to provide Plaintiff with information about his own employment
record, . . ." (*Id.* at ¶ 78). She "was specifically instructed by Defendant Borough President
Chacke not to provide Plaintiff with his own employment record information, . . ." (*Id.* at ¶
79). As a result, "Plaintiff was forced to file a Right-to-Know request simply to see his own
employment records, . . ." (*Id.* at ¶ 80).

Filing a lawsuit constitutes protected activity under the First Amendment. *Allah v. Al-
Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002) (citing *Anderson v. Davila*, 125 F.3d 148,
161 (3d Cir. 1997)). In response to filing this lawsuit, Defendant Chacke allegedly interfered
with Plaintiff's attempts to view his own employment records, which Plaintiff has a right to do
under state law. Furthermore, assuming that the facts contained in paragraphs 51 through
56 took place after May 2012, those actions Defendant Lahovksi allegedly took (*e.g.*,
denying training, withholding pay, etc.) also would constitute adverse actions, provided
Plaintiff establishes the necessary causal link.

Plaintiff has alleged facts sufficient to support a First Amendment retaliation claim, so
the Court will deny Defendants' motion as to Count IV.

## V. Conclusion

For the foregoing reasons, the Court will grant in part and deny in part Defendants' motion to dismiss. Count I (Plaintiff's First Amendment retaliation claim), Count II (constitutional challenge to Special Order Memorandum), and Count III (§ 1983 conspiracy), will be dismissed with prejudice. The Court will deny without prejudice Defendants' motion to dismiss: paragraphs 51 through 56 in support of Count IV (Plaintiff's subsequent First Amendment retaliation claim), and Count IV itself. A separate Order follows.

Robert D. Mariani
United States District Judge