THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PETER LAKKIS | : | |
| | : | |
| **Plaintiff** | : | |
| | : | |
| v. | : | **3:12-CV-1024** |
| | : | **(JUDGE MARIANI)** |
| FREDERICK LAHOVSKI and | : | |
| JOE CHACKE | : | |
| | : | |
| **Defendants** | : | |

### MEMORANDUM OPINION

#### I.   INTRODUCTION AND PROCEDURAL HISTORY

On May 31, 2012, Plaintiff initiated this action by filing a complaint under the

provisions of 42 U.S.C. § 1983. (Doc. 1). Plaintiff alleged that Defendants violated his First

Amendment right to free speech. (*Id.*). By Memorandum and Order dated November 5,

2012, this Court granted Defendants' motion to dismiss, but granted Plaintiff leave to file an

amended complaint. (Docs. 15, 16). Plaintiff thereafter filed an amended complaint on

November 20, 2012. (Doc. 17). Defendants filed a motion to dismiss the amended

complaint. (Doc. 18). On May 30, 2013, this Court granted Defendants' motion but allowed

Plaintiff the opportunity to file a second amended complaint. (Docs. 37, 38).

On June 11, 2013, Plaintiff filed a second amended complaint and on June 14, 2013,

Plaintiff filed a third amended complaint.[1] (Docs. 39, 40). Defendants again moved to

dismiss the third amended complaint. (Doc. 41). On January 30, 2014, this Court granted

---

[1]   This matter is proceeding on Plaintiff's third amended complaint. (Doc. 40).

in part and denied in part Defendants' motion to dismiss. (Docs. 54, 55). Pursuant to this

Court's January 30, 2014 Memorandum and Order, the only remaining claim relates to the

alleged First Amendment retaliation following Plaintiff's commencement of the instant

Federal lawsuit. (*Id.*). Specifically, this Court denied without prejudice Defendants' motion

to dismiss paragraphs 51 through 56, and Count IV, of the third amended complaint. (Doc.

54).

Presently pending before the Court is Defendants' motion for summary judgment.

(Doc. 57). The parties have fully briefed the motion and it is ripe for disposition. For the

reasons set forth below, the motion will be granted in part and denied in part.

## II.    STANDARD OF REVIEW

Through summary adjudication, the court may dispose of those claims that do not

present a "genuine issue as to any material fact." FED. R. CIV. P. 56(a). Summary judgment

"should be rendered if the pleadings, the discovery and disclosure materials on file, and any

affidavits show that there is no genuine issue as to any material fact and that the movant is

entitled to judgment as a matter of law." FED. R. CIV. P. 56(c); *Turner v. Schering-Plough

Corp.,* 901 F.2d 335, 340 (3d Cir. 1990). "As to materiality, . . . [o]nly disputes over facts

that might affect the outcome of the suit under the governing law will properly preclude the

entry of summary judgment." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct.

2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Once such a showing has been made, the non-moving party must offer specific facts contradicting those averred by the movant to establish a genuine issue of material fact. *Lujan v. Nat'l Wildlife Fed'n,* 497 U.S. 871, 888, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). Therefore, the non-moving party may not oppose summary judgment simply on the basis of the pleadings, or on conclusory statements that a factual issue exists. *Anderson,* 477 U.S. at 248. Rather, the opposing party must point to a factual dispute requiring trial and the district court "may limit its review to the documents submitted for the purposes of summary judgment and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified Sch. Dist.,* 237 F.3d 1026, 1030-1031 (9th Cir. 2001); *see also Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994). "Inferences should be drawn in the light most favorable to the non-moving party, and where the non-moving party's evidence contradicts the movant's, then the non-movant's must be taken as true." *Big Apple BMW, Inc. v. BMW of N. Am., Inc.,* 974 F.2d 1358, 1363 (3d Cir.1992), *cert. denied* 507 U.S. 912, 113 S.Ct. 1262, 122 L.Ed.2d 659 (1993).

### III.    STATEMENT OF UNDISPUTED FACTS

In accordance with Local Rule 56.1, Defendants have submitted a Statement of Material Facts as to which they submit there is no genuine issue for trial. (Doc. 58-11, ("SMF")). Plaintiff subsequently submitted his response to Defendants' Statement of

Material Facts. (Doc. 62). Except where expressly noted as disputed, the following facts of record are undisputed.

Plaintiff is a police officer with the Borough of Forty Fort, and Defendants are Frederick Lahovski, the Police Chief, and Joe Chacke, the Borough Council President. (SMF, ¶¶ 3, 5, 51, 52; Doc. 62, Answer to Statement of Facts, ¶¶ 3, 5, 51, 52).

Plaintiff's job responsibilities include traffic enforcement, responding to calls, basic investigations, arrest, and prosecution at the preliminary hearing stage. (Id. at ¶ 6). A Special Order Memorandum dated March 4, 2012 was issued by Defendant Lahovski to all personnel of the Forty Fort Borough Police Department from the Chief of Police. (Id. at ¶ 7). The Special Order Memorandum stated as follows:

> Effective immediately, any time a member of the police department wishes to speak with the Mayor and/or any member of the Borough Council concerning a function of the police department, the member is required to notify the Chief of Police.
>
> The notification must be in writing and presented in person prior to contacting the aforementioned persons. The subject of the intended contact does not need to be listed unless specifically requested by the Chief of Police.
> If a member of the police department is contacted by the Mayor and/or any member of Borough Council concerning police department function, the member is required to notify the Chief of Police in writing immediately after the contact.
>
> Grievances, Unfair Labor Practices, S.O. 11-003, and liaison assignments directed by the Chief of Police are exempt from this order.
>
> Any question, please see me.

(Doc. 58-4, p. 164, March 4, 2012 Special Order Memorandum).

Plaintiff claims that this Memorandum violated his First Amendment Rights. (Doc. 58-11, ¶ 7; Doc. 62, ¶ 7).

The parties dispute whether Plaintiff told the Police Chief that he wished to speak to the Mayor or Members of Borough Council about the Chief's Order. (*Id.* at ¶ 11). Regardless, Plaintiff maintains that on or about May 23, 2012, he spoke to the Mayor about the Police Chief's alleged misconduct/orders to perform illegal tasks. (*Id.*).

In general, the parties dispute whether Plaintiff was retaliated against by Defendant Lahovski for exercising his First Amendment rights. (*Id.* at ¶ 26).

The parties dispute whether the Police Chief retaliated against Plaintiff by failing to respond to requests as to whether he could leave his shift without knowing whether the Pennsylvania State Police would cover the Borough. (Doc. 40, ¶ 51; Doc. 58-11, ¶¶ 9, 10; Doc. 62, ¶¶ 9, 10). Specifically, in May of 2012, at the conclusion of Plaintiff's shift, he was unsure if he should leave and unsure if he would be relieved by another Forty Fort Police Officer or a State Police Officer. (Doc. 58-11, ¶ 9; Doc. 62, ¶ 9).

Plaintiff alleges that on May 25, 2012, through counsel, he requested that Defendants cease and desist Plaintiff's free speech suppression and retaliation and, as a result, Defendant Lahovski launched an internal investigation against Plaintiff. (*Id.* at ¶¶ 13, 28). The parties dispute whether Plaintiff engaged in any wrongdoing that would have subjected him to an internal investigation. (*Id.* at ¶ 14). The parties further dispute whether

Plaintiff's purported failure to appear for Criminal Information write-ups was the basis for the internal investigation. (*Id.* at ¶¶ 14, 15).

Pursuant to the internal investigation, an Administrative hearing was held on June 4, 2012. (*Id.* at ¶¶ 16-19). The parties dispute whether the hearing was based on fabricated wrongdoing, i.e. failing to appear at the Criminal Information write-ups. (*Id.* at ¶ 14). The parties also dispute whether Plaintiff was informed at the Administrative hearing that he would be given a disposition subsequent to the hearing. (*Id.* at ¶ 20). Both parties acknowledge that Plaintiff, and his FOP representative, did not receive a disposition after the Administrative hearing, and that Plaintiff did not discuss with the Chief that he failed to receive a disposition. (*Id.* at ¶¶ 21- 23).

Plaintiff has never been suspended from the Forty Fort Police Department, though the parties dispute whether Plaintiff has ever been disciplined as a Forty Fort Police Officer. (*Id.* at ¶¶ 24, 25).

The parties dispute whether Plaintiff was denied training, whether he was ordered by the Chief to perform specific tasks during his shift, and whether he was denied pay. (*Id.* at ¶ 26). Plaintiff was informed that the reason he did not receive a raise was because other officers hired with him were incorrectly given a raise during their first year. (*Id.* at ¶ 27).

On June 26, 2012, Plaintiff sent a text message to the Mayor stating that he did not feel well, he attempted to notify the Chief that he was sick, but the Chief failed to respond. (*Id.* at ¶ 30).

6

Plaintiff claims that he was given orders to do specific duties, such as issue parking tickets. (*Id.* at ¶¶ 32-35). Plaintiff maintains that these specific orders amounted to an illegal quota system because he was required to issue the tickets and could not exercise his discretion. (*Id.* at ¶¶ 33, 37). Plaintiff states that a police officer cannot be ordered by a Chief, Supervisor, Council person, or Mayor to cite, arrest, or issue a parking ticket. (*Id.* at ¶ 39). Rather, police officers may use their discretion in such instances. (*Id.* at ¶ 38).

As a Forty Fort Police Officer, Plaintiff claims that he was never asked to issue parking tickets prior to Defendant Lahovski's time as Chief. (*Id.* at ¶ 36). The parties dispute whether Defendant Lahovski retaliated against Plaintiff by ordering him to issue citations. (*Id.* at ¶¶ 40, 50). Plaintiff acknowledges that Defendant Lahovski did not order him to issue a "specific number" of citations, rather he was just ordered to write the citations. (*Id.*).

The parties dispute whether Plaintiff was denied extra duty time and compensatory time. (*Id.* at ¶¶ 42, 48). The parties also dispute whether Plaintiff was provided with an opportunity to review his compensatory time and sick leave. (*Id.* at ¶ 44). Plaintiff maintains that he had to file a Right-to-Know request in order to view these personnel records, and upon review, his listed time is incorrect. (*Id.* at ¶¶ 44-48).

Lastly, the parties dispute when Defendant Chacke discussed any issues regarding Plaintiff with Defendant Lahovski. (*Id.* at ¶¶ 53, 54).

## IV.   ANALYSIS

## A.    First Amendment Retaliation

To state a First Amendment retaliation claim, Plaintiff must prove (1) that he engaged in constitutionally-protected activity; (2) that the government responded with retaliation; and (3) that the protected activity caused the retaliation. *Eichenlaub v. Twp. of Indiana*, 385 F.3d 274, 282 (3d Cir. 2005). The first factor is a question of law, whereas the retaliation and causation requirements are questions of fact. *Gorum v. Sessoms*, 561 F.3d 179, 184 (3d Cir. 2009).

Retaliation claims under the First Amendment generally fall into two different categories: (1) claims dealing with conduct interfering with access to courts, and (2) claims dealing with conduct that is in retaliation to protected First Amendment activities. *Grimm v. Borough of Norristown*, 226 F. Supp. 2d 606, 637 (E.D. Pa. 2002) (citations omitted). As stated, Plaintiff's sole remaining claim relates to the alleged First Amendment retaliation following Plaintiff's commencement of the instant Federal lawsuit.

To establish the requisite causal connection, a plaintiff usually must prove either "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing to establish a causal link." *Lauren W. ex rel. Jean W. v. DeFlaminis,* 480 F.3d 259, 267 (3d Cir.2007); *Barr v. Feild, et al.*, 2012 U.S. Dist. LEXIS 15648, *6 (E.D. Pa. 2012). "The temporal proximity of a retaliatory act to a plaintiff's exercise of his or her First Amendment rights is probative, but

not dispositive, of the causation element." *Conklin v. Warrington Twp.*, 2009 U.S. Dist. LEXIS 36256, \*12 (M.D. Pa. 2009) (Conner, J.) (citing *Estate of Smith v. Marasco*, 318 F.3d 497, 512 (3d Cir. 2003)). "For temporal proximity alone to establish causation, the timing of the alleged retaliatory action must be unusually suggestive of retaliatory motive before a causal link will be inferred." *Conklin*, 2009 U.S. Dist. LEXIS 36256 at \*13 (quoting *Krouse v. Am. Sterilizer Co.*, 126 F.3d 494, 503 (3d Cir. 1997)).

### 1. Consideration of Plaintiff's Filing a Lawsuit as a Protected Activity

"To be protected, the speech must implicate a matter of public concern. . . . Speech implicates a matter of public concern if the content, form, and context establish that the speech involves a matter of political, social, or other concern to the community." *Miller v. Clinton Cnty.*, 544 F.3d 542, 548 (3d Cir. 2008) (citing *Connick v. Myers*, 461 U.S. 138, 146–148, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983)). Filing a lawsuit constitutes protected activity under the First Amendment. *Allah v. Al-Hafeez*, 208 F. Supp. 2d 520, 535 (E.D. Pa. 2002) (citing *Anderson*, 125 F.3d at 161).

Defendants do not dispute that Plaintiff has a protected right of access to the courts under the First Amendment or that Plaintiff consulted with an attorney to file a lawsuit. (Doc. 58, pp. 8-9; Doc. 63, p. 15). Thus, it is undisputed that Plaintiff meets the first requirement of a First Amendment retaliation claim.

2.      *Plaintiff's Evidence Showing Disputed Issues of Material Fact as to his
        Filing a Lawsuit as a Substantial or Motivating Factor*

In response to filing the instant Federal lawsuit, Plaintiff claims that Defendants

retaliated against him.  Plaintiff maintains that after his lawyer issued the cease and desist

letter and filed the instant lawsuit, Defendants Lahovski and Chacke "harbored animosity"

towards him and retaliated against him.  (Doc. 61-10, Affidavit of Peter Lakkis, p. 4, ¶ 14).

Defendants counter that Plaintiff cannot prove that his protected activity caused any

retaliation, and he therefore cannot meet the remaining two (2) requirements of a retaliation

claim.  (Doc. 58, pp. 8-9; Doc. 63, p. 15).  Defendants further state that Plaintiff has not

established a causal connection between his protected activity and the alleged adverse

actions.  (Doc. 58, pp. 9-10).

Plaintiff submitted an affidavit wherein he states that after he filed the present lawsuit

on May 31, 2012, he was subjected to the following retaliatory acts:

a.      On or about June 2, 2012, just two days after filing this Complaint, I
        was brought up on fabricated charges of wrongdoing;

b.      I was ordered to do specific non-normal duties yet none of the other
        officers had to do the same;

c.      On or about June 26, 2012, Defendant Lahovski refused to answer
        Plaintiff's phone messages about work activities;

d.      I was denied training yet prior to filing a lawsuit I was allowed to attend
        similar training;

e.      On September 24, 2012, I requested information from my personnel
        file, such as remaining uniform allowance, dental card status, and
        remaining amounts of sick, personal and compensatory time[;]

f.    Borough Manager Barbara Fairchild told me that she had prepared a packet with the requested information and Defendant Chacke and Lahovski confiscated it;

g.    I was denied access to my dental cards by Defendant Chacke and Lahovski yet the Borough Manager had them ready for me;

h.    I was denied access to my personnel file in violation of state law;

i.    I was forced to file a right-to-know request on my own personnel information because Defendants instructed the Borough Manager not to provide me with the information;

j.    I was denied extra duty and comp time.

(Doc. 61-10, Affidavit of Peter Lakkis, pp. 2-3, ¶ 4) (citations omitted).

As to the June 2, 2012 internal investigation conducted by the Forty Fort Borough Police Department, Plaintiff contends that this investigation was carried out in retaliation for filing the instant lawsuit and was based on "fabricated charges of wrongdoing." (Doc. 61, p. 1; Doc. 61-10, Affidavit of Peter Lakkis, p. 2, ¶ 4). Defendant Lahovski completed an Internal Inquiry Request wherein he stated that the internal investigation was conducted based on Plaintiff's failure to appear for a Criminal Information write-up on April 26, 2012, and subsequent failure to attend the rescheduled Criminal Information write-up on May 10, 2012. (Doc. 61-2, p. 2, Internal Inquiry Request).

In conjunction with the investigation, Plaintiff completed an Inquiry Interview Sheet. (Doc. 58-2, pp. 40-41, Inquiry Interview Sheet dated June 4, 2012). In the form, Plaintiff stated that he was aware that he was required to attend a Criminal Information write-up on April 26, 2012, he failed to attend this obligation because he "overlooked it" and it was a

"mistake", and he did not inform the Police Chief or District Attorney that he was unable to attend the proceeding. (*Id.*). Additionally, Plaintiff's deposition testimony confirms that he did not attend the proceeding and he could not "specifically remember" why he failed to appear. (Doc. 58-1, pp. 64-65, Deposition Transcript). As to the Criminal Information write-up on May 10, 2012, Plaintiff indicates that he did in fact attend this proceeding. (Doc. 58-2, Inquiry Interview Sheet dated June 4, 2012). Plaintiff adamantly denies that he engaged in any wrongdoing to justify the June 2012 internal investigation. Plaintiff states that he was never disciplined and never received a disposition after this investigation, thus proving that the investigation was based on false charges. The Court is cognizant of Defendants' position that Plaintiff may not have suffered any employment-related discipline as a result of the internal investigation, however, viewing the facts in the light most favorable to Plaintiff, the Court finds that Plaintiff has provided evidence to establish a genuine issue of material fact as to whether the internal investigation was based on retaliatory motives. *See Lupyan v. Corinthian Colleges Inc.*, 761 F.3d 314, 320-21 (3d Cir. 2014) ("[A] single, non-conclusory affidavit . . . , when based on personal knowledge and directed at a material issue, is sufficient to defeat summary judgment. This remains true even if the affidavit is 'selfserving.'") (internal citation omitted). While Plaintiff acknowledges that he did not attend the first Criminal Information write-up, he asserts that he attended the rescheduled proceeding, that he never received a disposition after the internal investigation, and the investigation was therefore baseless and launched in retaliation for his Federal lawsuit.

In support of Plaintiff's claim that the Police Chief retaliated against him by failing to respond to his messages, Plaintiff submitted a copy of a June 26, 2012 text message he sent to the Mayor stating as follows, "I'm not feeling well. I will not be in for my shift tonight. I left messages for the Chief. He didn't respond." (Doc. 61-9, p. 4). Thus, Plaintiff maintains that he attempted to contact the Chief, the Chief failed to respond, and he resorted to contacting the Mayor. Plaintiff claims that he never had difficulty conversing with the Chief prior to filing his Federal lawsuit and the Chief's refusal to respond to his messages began after filing said lawsuit. However, Plaintiff has failed to come forward with any consequence, great or small, that resulted from Defendant Lahovski's lack of responses. Once again viewing the facts in the light most favorable to the non-moving party, Plaintiff in this instance has failed to produce sufficient evidence to establish that the Police Chief's refusal to answer his messages, without more, presents sufficient indicia of an adverse action as to support a claim for retaliation for filling the instant lawsuit.

In support of the alleged "non-normal duties" that Plaintiff was ordered to perform, he submitted memoranda dated September 7 and 11, 2012, and October 11, 2012, from Defendant Lahovski directing him to issue citations for parking permit violations and remove yard signs. (Doc. 61-3). The September 7, 2012 Memorandum states as follows:

> This weekend, Fri, Sat, Sun please check each of the street[s] in the Borough for parking permit violations relative to 0200-0500 hours. Write an Alert report each night detailing the areas you covered and document any/all tickets you write.

(Doc. 61-3, p. 1) (sic).

13

The September 11, 2012 Memorandum states as follows:

There are multiple ordinance violations of sign postings on tree lawn etc. Check the jurisdiction tonight, 9/11-12/12, and remove any items found in violation, document and begin an investigation. Each item found will need an individual incident report.

(Doc. 61-3, p. 2) (*sic*).

Lastly, the October 11, 2012 Memorandum states as follows:

Apparently you have missed multiple signs on the tree lawn. I received additional complaints. You are directed to use Forty Fort Borough, 1271 Wyoming Ave. as your complainant. Specifically check Wyoming Ave., Murray, Rutter and Walnut Sts. Document each individually and work toward compliance.

(Doc. 61-3, p. 3) (*sic*).

Plaintiff maintains that he was never ordered to perform these specific duties prior to filing the instant lawsuit or prior to Defendant Lahovski's time as Chief. (Doc. 61-10, p. 2, ¶ 4, Affidavit of Peter Lakkis). Plaintiff further claims that no other officers were directed to perform any specific job duties. (*Id.*). Viewing the evidence in the light most favorable to Plaintiff, he has demonstrated a genuine issue of fact as to whether these directives were based on retaliatory motives and whether he was the only officer directed to perform these tasks. Although Plaintiff was not directed to issue a specific number of citations, he was directed to canvass certain areas for potential violations and document his findings and any citations issued. At this juncture, Plaintiff has produced sufficient evidence in support of this allegation to survive summary judgment. However, at trial, Plaintiff will have the burden of establishing that the "non-normal" duties he contends that he was required to perform

14

present an adverse action, i.e., were more onerous than the duties he normally performed or that are normally performed by other officers; that the duties were in some manner demeaning, humiliating, or in derogation of his status as a police officer; that Defendant Lahovski lacked the legal authority to require him to perform these duties; or that the duties were outside the scope of those duties which police officers, as a matter of law, are charged to perform.

Regarding the personal information requested, the third amended complaint alleges that Defendant Chacke "refus[ed] to allow Plaintiff to view his own vacation, sick and personal time records, which is against the law pursuant to 43 P.S. § 1322, Inspection of Employment Records Law." (Doc. 40, at ¶¶ 66, 75). Specifically, around September 14, 2012, "Plaintiff requested information about his employment regarding his annual uniform allowance, status of dental coverage card, and status of personal, sick, and vacation time." (*Id.* at ¶ 76). Although the Borough Manager responded to Plaintiff's request, Defendants intercepted "the envelope that the Borough Manager had provided for Plaintiff" and withheld it. (*Id.* at ¶ 77). Furthermore, Defendant Chacke sent the Borough Manager an e-mail "advising of possible disciplinary action against her for . . . attempting to provide Plaintiff with information about his own employment record, . . . " (*Id.* at ¶ 78). She "was specifically instructed by Defendant Borough President Chacke not to provide Plaintiff with his own employment record information, . . . " (*Id.* at ¶ 79). As a result, "Plaintiff was forced to file a Right-to-Know request simply to see his own employment records, . . . " (*Id.* at ¶ 80).

In support of these allegations, Plaintiff submitted a letter he sent to the Borough

Manager requesting such information. (Doc. 61-4). Defendants submitted copies of emails

between the Borough Manager and Defendant Chacke. (Doc. 58-5, Emails dated

September 27 and 28, 2012). Defendants reason that although the Borough Manager

compiled a packet containing the requested information, it ultimately was not provided to

Plaintiff because it contained payroll information of other police officers, and the entire

inquiry should have been handled by the Police Chief. (*Id.*). Based on these reasons,

Defendant Chacke "directed the Chief to take the packet." (*Id.*). In a further attempt to view

his personal records, Plaintiff then filed Right-to-Know requests on October 4 and 23, 2012,

and submitted copies to the Court. (Docs. 61-5, 61-8). Plaintiff has produced evidence, so

as to survive summary judgment, that Defendants interfered with his right to view his own

personnel records, which Plaintiff has a right to do under state law. *See* 43 .P.S. § 1322

("An employer shall, at reasonable times, upon request of an employee, permit that

employee or an agent designated by the employee to inspect his or her own personnel files

used to determine his or her own qualifications for employment, promotion, additional

compensation, termination or disciplinary action.").

Lastly, regarding Plaintiff's claims that he was denied training, extra duty and

compensatory time, he has provided no evidence in support of these claims. In his affidavit,

Plaintiff states, in a conclusory fashion, that he was "denied training" and "denied extra duty

and comp time." (Doc. 61-10, Affidavit of Peter Lakkis, p. 3, ¶ 4). Plaintiff does not provide

16

dates with any specificity regarding when these alleged denials occurred and provides no evidence to support these statements made in his affidavit. (Doc. 58-11, ¶¶ 41-42; Doc. 62, ¶¶ 41-42). Thus, Plaintiff has failed to present adequate evidence as to the claims that he was denied training, extra duty and compensatory time. The motion for summary judgment will be granted as to these claims.

As to the causation element of a retaliation claim, Plaintiff initiated the instant action on May 31, 2012 and asserts that the alleged retaliatory actions began just two (2) days later, on June 2, 2012, and allegedly continued until October 2012. (Doc. 61-10). Thus, Plaintiff has established a causal connection between his protected activity and the adverse action. "In the employment context, the Third Circuit Court of Appeals has suggested that a temporal proximity of two days is sufficient to establish causation. . . . " *Conklin*, 2009 U.S. Dist. LEXIS 36256 at \*13. This Court finds that the two (2) days between the filing of Plaintiff's complaint and the beginning of the alleged retaliatory action is unusually suggestive.

### 3.   Basis for Defendants' Decision

If a plaintiff is successful in meeting his burden of establishing that his protected activity was a substantial or motivating factor in Defendants' alleged retaliatory actions, Defendants can successfully rebut his claims by demonstrating that they would have reached the same decision even in the absence of the protected conduct. *See Baldassare v. New Jersey*, 250 F.3d 188, 195 (3d Cir. 2001). This inquiry presents a question of fact to

be determined by the fact-finder.  If the fact-finder concludes that Plaintiff was retaliated against for filing the instant Federal lawsuit, Defendants still have an opportunity to demonstrate they would have followed the same course of action.

## B.   Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *see also Crouse v. S. Lebanon Twp.*, 668 F. Supp. 2d 664, 671 (M.D. Pa. 2009) (Conner, J.).  This doctrine "provides not only a defense to liability, but "immunity from suit." *Milhouse v. Gee*, 2011 U.S. Dist. LEXIS 91749, *25 (M.D. Pa. 2011) (Rambo, J.) (citing *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)).  "[I]n reviewing a motion for summary judgment on the basis of qualified immunity, normal principles of summary judgment still apply, and any disputes of fact must be resolved in favor of the plaintiff." *Estate of Smith v. Marasco*, 430 F.3d 140, 148 n.3 (3d Cir. 2005).

"[C]laims of qualified immunity are to be evaluated using a two-step process." *Bennett v. Murphy*, 274 F.3d 133, 136 (3d Cir. 2001) (citing *Saucier v. Katz*, 533 U.S. 194 (2001)).  First, the Court must determine "whether 'a constitutional right would have been violated on the facts alleged' and, if so, whether the right was 'clearly established.'" *Kelly v. Borough of Carlisle*, 544 Fed. Appx. 129, 134 (3d Cir. 2013) (quoting *Saucier*, 533 U.S. at

200-201). However, the Court is no longer required to conduct these two inquiries

sequentially. *Pearson*, 555 U.S. at 239-41. "[C]ourts may look to whether the law

prohibiting a defendant's conduct was clearly established without first determining whether

there was a constitutional violation under the circumstances presented." *Kelly*, 544 Fed.

Appx. at 134 (citing *Pearson*, 555 U.S. at 236).

In a First Amendment retaliation case where government officials assert that they are

entitled to qualified immunity, the Third Circuit explained that the determination turns on a

"somewhat illogical inquiry" into whether officials reasonably could believe that their

motivations were proper even when their motivations were in fact retaliatory. *Larsen v.*

*Senate of Com. of Pa.*, 154 F.3d 82, 94 (3d Cir. 1998). Thus, the qualified immunity

analysis in the context of a First Amendment retaliation claim turns on "factual

determinations as to the officials' subjective beliefs and motivations, and thus cannot

properly be resolved on the face of the pleadings, but rather can be resolved only after the

plaintiff has had an opportunity to adduce evidence in support of the allegations that the true

motive for the conduct was retaliation." *Larsen*, 154 F.3d at 94. A bare allegation of

retaliatory motive, however, is not sufficient to defeat an assertion of qualified immunity. *Id.*

at 95. If "the legitimate basis for the actions [is] so apparent that the plaintiff's allegations of

retaliatory motive could not alter the conclusion", a defendant may be entitled to qualified

immunity. *Id.*

In light of the disputed facts discussed above, this Court cannot determine, at this time, whether Defendants would have taken the same actions in the absence of Plaintiff's protected conduct. *See Russoli v. Salisbury Twp.*, 126 F. Supp. 2d 821, 857 (E.D. Pa. 2000) (holding that, while "a bare allegation of retaliatory motive is not necessarily sufficient to defeat an assertion of qualified immunity as to a retaliation claim," where the defendants had not "undisputedly demonstrated that their motivations were fair" there was no qualified immunity). Thus, Defendants' motion for summary judgment based on qualified immunity will be denied at this stage of the litigation. *See Curley v. Klem*, 298 F.3d 271, 278 (3d Cir. 2002) ("[j]ust as the granting of summary judgment is inappropriate when a genuine issue exists as to any material fact, a decision on qualified immunity will be premature when there are unresolved disputes of historical fact relevant to the immunity analysis").

## C.   Punitive Damages

The Supreme Court has held that "a jury may be permitted to assess punitive damages in an action under § 1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Eichenlaub v. Township of Indiana*, 214 Fed. Appx. 218, 223 (3d Cir. 2007) (citing *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983)). The Third Circuit has further held that "this standard is disjunctive, and thus the defendant's conduct need only be reckless or callous." *Id.* at 223-24 (citing *Springer v. Henry*, 435 F.3d 268, 281 (3d Cir. 2006)).

In the instant matter, Plaintiff seeks punitive damages against Defendants in their individual capacities. If the fact-finder accepts Plaintiff's allegations and the evidence in support thereof, it could reasonably find that Defendants were reckless or callous in their conduct. Therefore, the claims that this Court found must go to the fact-finder on the merits may also be considered for punitive damages. The Court will therefore deny Defendants' motion for summary judgment as to punitive damages with respect to these claims.

## V. CONCLUSION

Based on the foregoing, Defendants' motion for summary judgment will be granted in part and denied in part.

A separate Order follows.

Robert D. Mariani
United States District Judge